**BURSOR & FISHER, P.A.**
Neal J. Deckant (State Bar No. 322946)
Sean L. Litteral (State Bar No. 331985)
1990 North California Boulevard, Suite 940
Walnut Creek, CA  94596
Telephone: (925) 300-4455
Facsimile:  (925) 407-2700
Email: ndeckant@bursor.com
        slitteral@bursor.com

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ERIC WADE, individually and on behalf of all others similarly situated, | Case No. |
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| v. | <u>JURY TRIAL DEMANDED</u> |
| ONEPLUS USA CORP. and ONEPLUS, INC. | |
| Defendants. | |

Plaintiff Eric Wade ("Plaintiff") brings this class action suit individually and on behalf of all others similarly situated against Defendants OnePlus USA Corp. and OnePlus Inc. (collectively "OnePlus" or "Defendants") for the design, manufacturing, marketing, and sale of the OnePlus 9 and OnePlus 9 Pro smartphones (the "Devices").  Plaintiff makes the following allegations pursuant to the investigation of his counsel and based upon information and belief, except as to the allegations specifically pertaining to himself, which are based on personal knowledge.

## NATURE OF THE ACTION

1.      This is a class action suit against Defendants for the design, manufacturing, marketing, and sale of the OnePlus 9 and OnePlus 9 Pro smartphones.  Plaintiff alleges that the Devices at issue contain a "Secret Setting" that restricts—or "throttles"—access to the Devices' processing power and other resources.  Specifically, benchmark applications are set to receive full access to the Devices' resources, so that the Devices will appear to run at full power under test conditions, but real-world applications will receive throttled and reduced performance.  This throttling not only applies to "a handful of apps, but applies to pretty much everything that has any level of popularity in the Play Store, including the whole of Google's app suite, all of Microsoft's Office apps, all popular social media apps, and any popular browser such as Firefox, Samsung Internet, or Microsoft Edge."  As such, there exists "a large disconnect between the performance that's exhibited in the most popular applications out there and the experience that users will be having within the most popular applications on the market."

2.      Since 2013, Defendants have made tremendous strides to become a globally-recognized smartphone brand with a "cult-like following" comparable to the likes of Apple and Samsung.  Once limited to being an online-only and invite-only brand, Defendants have quickly expanded their offerings and have released an average of at least two new cellular devices per year.  Defendants' early offerings were dubbed "flagship killers" because of their combination of design, powerful specifications, fast and lean software, and a low price.

3.      As a part of the March 23, 2021 launch for the OnePlus 9 and 9 Pro smartphones, the company rebranded, informing customers that "[w]e are fueled by the words 'Never Settle,' disrupting the status quo to bring premium devices to North America that is in reach of more

consumers."  To this effect, Defendants claim on their website that: "We continue to push the boundaries of what's possible.  Pulling the industry forward since our founding, we will Never Settle in delivering innovative capabilities to improve consumers lives."  In doing so, Defendants claim that they are "community driven" because they "work[] with our OnePlus community members, we listen to what you want and need, and develop products built for you, by you."

4.     However, despite these promises, Defendants have engaged in secretly "throttling" the performance of apps on their phones (hereafter, "the Defect").  That is, Defendants have programmed their OnePlus 9 and OnePlus 9 Pro smartphones to limit access to their fastest processing cores for a number of popular applications, causing slowdown in typical workloads such as web browsing and gaming.  According to one study, Defendants give "benchmark applications" full performance—so that the phones appear to run at full speed when tested and measured—while commonly-used applications are secretly configured for significantly reduced performance.  In turn, Defendants can advertise their Devices as achieving significant speeds and high-level performance.  But the advertised benchmark results are useless for the user experience, as applications on OnePlus 9 and OnePlus 9 Pro smartphones are secretly throttled by Defendants.

5.     Consequently, consumers have been led to believe, based on Defendants' representations, that the Devices are much faster and powerful than they perform.  To further this deception, Defendants maintain a Secret Setting that allows them to choose which applications receive priority.  This means that in light of the Defect, consumers are not getting the full advertised performance of their phones, paying a significant price premium for characteristics— *i.e.*, speed, power, and performance—that they are not receiving.

6.     Plaintiff brings his claims against Defendants individually and on behalf of a Class of all other similar situated purchasers of the OnePlus 9 and 9 Pro for: (1) violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030(a)(5)(A)(iii); (2) violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030(a)(5)(C); (3) violation of California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq*.; (4) violation of California's False Advertising Law, Cal. Bus. & Prof. Code § 17500, *et seq*.; (5) violation of California Computer Data Access and Fraud Act, Cal. Penal Code § 502, *et seq*.; (6) trespass to chattels; (7) fraud; (8) constructive fraud;

(9) fraudulent inducement; (10) money had and received; (11) fraudulent omission or concealment; (12) fraudulent misrepresentation; (13) negligent misrepresentation; and (14) quasi-contract / unjust enrichment.

## PARTIES

7.      Plaintiff Eric Wade is, and at all times relevant to this action has been, a citizen of California and a resident of San Jose.  In June 2021, Plaintiff Wade purchased his OnePlus 9 Pro in San Jose, California directly from Defendants at their online store, www.oneplus.com.  Prior to his purchase of the Device, he did not know, nor could he have known through reasonable diligence, of the Defect in his Device.  Due to the Defect, Plaintiff's Device did not operate as Defendants warranted and promised in their advertisements, representations, and the information publicly available in the marketplace.  Additionally, none of the packaging in which the Device was sold revealed that there was a Defect or that Defendants would use their Secret Setting to "throttle" or otherwise regulate the speed pursuant to which Plaintiff's Device would operate.  Accordingly, not only was Plaintiff's Device defective at the point of sale due to the Defect, but Defendants exacerbated the problems via their misrepresentations and omissions of the Devices' performance. As a result of Defendants' actions, Plaintiff did not receive the benefit of his bargain and was injured as a result.  If Plaintiff had been told of this Defect and the deceptive manner in which Defendants would conceal this Defect, Plaintiff would not have purchased his Device, or would have paid substantially less.

8.      OnePlus USA Corp. is a corporation organized under the laws of Nevada, having a place of business at 5000 Riverside Dr, Ste 300, Irving, Texas, 75039-4314.

9.      OnePlus Inc. is a corporation organized under the laws of California, having its principal place of business at 4017 Marjoram Terrace, Fremont, California, 94538.

## JURISDICTION AND VENUE

10.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because there are more than 100 class members and the aggregate amount in controversy exceeds $5,000,000.00, exclusive of interest, fees, and costs, and at least one Class member is a citizen of a state different from Defendant.

11.     This Court has personal jurisdiction over Defendants because Defendants purposefully availed themselves of this forum by conducting substantial business within California such that Defendants have significant, continuous, and pervasive contacts with the State of California.  Defendants also operate at least one office in California, and OnePlus Inc. maintains its principal place of business in Fremont, California.

12.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Defendants do substantial business in this District and a substantial part of the events giving rise to Plaintiff's claims took place within this District, as Plaintiff purchased his OnePlus 9 Pro in this District and is a citizen and resident of this District.

**FACTUAL ALLEGATIONS**

13.     Defendants have established themselves as dominant participants in the U.S. smartphone market.  In 2020, OnePlus was the only major brand to grow year-on-year, seeing sell-through / sales growth of 163% compared to 2019.  Their competitors, Apple and Samsung, on the other hand, saw year-on-year declines of 3% and 5%, respectively.  According to one expert, "[t]he main reason that the OnePlus brand has grown as much as it has is that it doesn't cut corners.  Unlike other mobile providers they aren't expecting consumers to pay more for less—they relay their cheaper production costs onto the consumer whilst delivering great quality."

14.     In light of Defendants' growing reputation for affordable excellence, the launch of the OnePlus 9 and 9 Pro was an important development for the company as they sought to establish a seat at the table amongst their biggest competitors.  But to do so, Defendants needed to match Apple and Samsung "both [of which] repeatedly highlight how much faster their processors are" as compared to the competition.  To this end, Defendants sought to establish speed and performance as hallmarks of their growing brand.  In designing the OnePlus 9, Defendants claim that the phone is "Engineered for Speed."

15.     Specifically, Defendants claim that: "The signature OnePlus 'Fast and Smooth' experience personifies our Never Settle spirit.  With our fastest ever 5G, ultra-powerful Snapdragon™ 888 CPU and next-gen RAM, uncompromising power has arrived.  Experience the next level of fast and smooth with the OnePlus 9."

16.     In explaining the OnePlus 9's "Maximum performance," Defendants further claimed that: "The Qualcomm® Snapdragon™ 888 with 5G is the world's most powerful Snapdragon™ CPU."

///

///

///

///

///

///

///

///

///

///

///

///



Snapdragon™ 888          Supercharg

## Maximum performance

The Qualcomm® Snapdragon™ 888 with 5G is the world's most powerful Snapdragon™ CPU. Redefining what's possible on smartphones, one prime Cortex-X1 core (2.84 GHz), three Cortex-A78 CPU cores (2.42 GHz), and four energy-efficient Cortex-A55 cores (1.8 GHz) deliver unprecedented power. Built on the leading-edge 5nm (5LPE) process node, 25% higher CPU performance compared to the Snapdragon™ 865 combines with industry-leading efficiency for trailblazing performance that lasts.

## Flagship graphics

The Adreno 660 GPU is paired with the Hexagon™ 780 DSP/NPU (running at 26 TOPS). Featuring 35% faster rendering over the previous generation, the GPU is also more power efficient. With an overall performance uplift, Adreno 660 delivers improved OLED display uniformity, picture quality, and sub-pixel rendering. The architecture also integrates next-gen desktop-level features, including updateable GPU drivers and patches.

17. Defendants further marketed their OnePlus 9 as: "Redefining what's possible on smartphones, one prime Cortex-X1 core (2.84 GHz), three Cortex-A78 CPU cores (2.42 GHz), and four energy-efficient Cortex-A55 cores (1.8 GHz) deliver unprecedented power." Defendants claim that the OnePlus 9 is: "Built on the leading-edge 5nm (5LPE) process node, 25% higher CPU performance compared to the Snapdragon™ 865 combined with industry-leading efficiency for trailblazing performance that lasts."

18. According to Defendants, this fast, high-performance device also delivers the consumer the "Power to Play." That is, Defendants encourage consumers to: "Power your way to victory with the flagship Snapdragon™ 888 with maximum frame rates and low latency." Defendants further claim that: "We optimized our gaming mode for even smoother gameplay. With OnePlus, gamers never settle."



19.     Defendants also encourage consumers to: "Accelerate your way to victory with a faster, smoother gaming performance.  When milliseconds count, make your ultimate play with the OnePlus 9."



20.     Defendants' emphasis on power, speed, and performance extends to the OnePlus 9 Pro.  Defendants claim that they equipped the 9 Pro with the Qualcomm Snapdragon 888 to deliver "Power on Tap."

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



21.    Defendants claim that: "The flawlessly 'Fast and Smooth' experience has come to exemplify OnePlus.  With cutting-edge 5G, it's effortless to stay in the loop without jumping through hoops.  Now with the most powerful Snapdragon™ platform ever, experience what's possible with speed revitalized."

22.    To this point, Defendants claim that: "The Qualcomm® Snapdragon™ 888 with 5G delivers unprecedented power."  Specifically, "[w]ith one Cortex-X1 core (2.84 GHz) for prime performance, three Cortex-A78 CPU cores (2.42 GHz), and four energy-efficient Cortex-A55 cores (1.8 GHz), every aspect of performance is boosted with an overall 25% performance uplift over Snapdragon™ 865."

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17



18   23.    The addition of the Snapdragon is also an important feature as it relates to

19 Defendants' marketing of the 9 Pro's gaming capabilities.  Defendants claim that "Next-level

20 mobile gaming arrives with the OnePlus 9 Pro.  The class-leading 120 Hz Fluid Display 2.0 and

21 massive power of the Qualcomm® Snapdragon™ 888 deliver incredible refresh rates and ultra-low

22 latency.  Optimized for performance, experience ultra-smooth gameplay.  With OnePlus, gamers

23 never settle."

24 ///

25 ///

26 ///

27 ///

28 ///



# Play with Power

Next-level mobile gaming arrives with the OnePlus 9 Pro. The class-leading 120 Hz Fluid Display 2.0 and massive power of the Qualcomm® Snapdragon™ 888 deliver incredible refresh rates and ultra-low latency. Optimized for performance, experience ultra-smooth gameplay. With OnePlus, gamers never settle.

Gaming elevated  →

24.     Defendants also equipped the OnePlus 9 and 9 Pro with OxygenOS 11, which is marketed as: "[O]ur uncompromising Never Settle vision dialed up to 11.  Swipe into our most intuitive, personalized smartphone experience.  A bold and seamless fusion of form and function, experience next-level fast and smooth."

///

///

///

///

///

///

///

///






25.    In other words, Defendants represent that: "Everything has been dialed up to 11: streamline everyday tasks, navigate more efficiently with intuitive gestures to access what's important, and enjoy a more personalized user experience."

///

///

///

///

///

///



26.     As demonstrated, the terms "speed," "power," and "performance" were integral to Defendants' marketing of the OnePlus 9 and 9 Pro.  But this enhanced capability did not come cheaply.  Instead, moving away from their early years, Defendants put a premium price tag on the Devices, debuting at $729 for the OnePlus 9 and $969 for the OnePlus 9 Pro.

27.     However, consumers did not receive the benefit of their bargain.  Though consumers paid for enhanced capability, what they received instead was a Device containing a Secret Setting that actually limited the Devices' overall performance.  This Secret Setting is not one that applies to only "a handful of apps, but applies to pretty much everything that has any level of popularity in the Play Store, including the whole of Google's app suite, all of Microsoft's Office apps, all popular social media apps, and any popular browser such as Firefox, Samsung Internet, or Microsoft Edge."  In turn, there exists "a large disconnect between the performance that's exhibited

in the most popular applications out there and the experience that users will be having within the most popular applications on the market."

**CLASS ALLEGATIONS**

28.     Pursuant to Federal Rule of Civil Procedure 23(b)(2) and (b)(3), as applicable, and (c)(4), Plaintiff seeks to represent a Class defined as all persons in the United States who purchased or leased the OnePlus 9 or OnePlus 9 Pro (the "Class").  Excluded from the Class are persons who made such purchases for purpose of resale, all Court personnel involved in the handling of this case, Defendants, their respective officers, directors and employees, and any entity that has a controlling interest in Defendants.

29.     Plaintiff also seeks to represent a subclass consisting of Class Members who reside in California (the "California Subclass").

30.     Subject to additional information obtained through further investigation and discovery, the above-described Class and Subclass may be modified or narrowed as appropriate, including through the use of multi-state subclasses.

31.     **Numerosity: Federal Rule of Civil Procedure 23(a)(1)**.  The members of the Class are so numerous and geographically dispersed that individual joinder of all class members is impracticable.  Plaintiff is informed and believes—based upon the publicly-available information discussed herein—that there are millions of class members, making joinder impracticable.  Those individuals' identities are available through Defendants' records, and class members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods.

32.     **Commonality and Predominance: Federal Rules of Civil Procedure 23(a)(2) and 23(b)(3)**.  Defendants have acted with respect to Plaintiff and the other members of the proposed Class in a manner generally applicable to each of them.  There is a well-defined community of interest in the questions of law and fact involved, which affect all class members. The questions of law and fact common to the Class predominate over the questions that may affect individual class members include the following:

a.     Whether Defendants designed, manufactured, advertised, and sold Devices that they knew contained Defects and withheld that information from consumers or purposefully misrepresented the Devices to consumers;

b.     Whether Defendants designed the Secret Setting to affect the speed, performance, and power of the OnePlus Devices;

c.     Whether and to what extent Defendants disclosed the effect of the Secret Setting to consumers;

d.     Whether Defendants used the Secret Setting to profit from Plaintiff and the other class members by inducing them to buy new replacements for their Devices;

e.     Whether Defendants are subject to liability for fraudulently concealing the material facts from Plaintiff and the other class members;

f.     Whether Defendants' conduct violated the Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, *et seq.*, and other applicable and similar laws of the United States and territories;

g.     Whether Defendants have violated the Consumer Fraud and Abuse Act, 18 U.S.C. § 1030, *et seq.*;

h.     Whether Defendants' conduct has violated Cal. Penal Code § 502;

i.     Whether Defendants' conduct violated any additional federal or state law;

j.     Whether Defendants have been unjustly enriched as a result of their fraudulent conduct, such that it would be inequitable for them to retain the benefits conferred upon them by Plaintiff and the other class members;

k.     Whether compensatory or consequential damages should be awarded to Plaintiff and the other class members;

l.     Whether punitive damages should be awarded to Plaintiff and the other class members;

m.     Whether restitution should be awarded to Plaintiff and the other class members; and

n.      Whether other, additional relief is appropriate, and what that relief should be.

33.     **Typicality: Federal Rule of Civil Procedure 23(a)(3).**  Plaintiff's claims are typical of other class members' claims because Plaintiff and class members were subjected to the same allegedly unlawful conduct and damaged in the same way.

34.     **Adequacy of Representation: Federal Rule of Civil Procedure 23(a)(4).** Plaintiff is an adequate class representative because his interests do not conflict with the interests of class members whom he seeks to represent, Plaintiff has retained counsel competent and experienced in complex class action litigation, and Plaintiff intends to prosecute this action vigorously.  The class members' interests will be fairly and adequately protected by Plaintiff and his counsel.

35.     **Declaratory and Injunctive Relief: Federal Rule of Civil Procedure 23(b)(2).** The prosecution of separate actions by individual class members would create a risk of inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for Defendants.  Such individual actions would create a risk of adjudication that would be dispositive of the interests of other class members and impair their interests.  Defendants have acted and/or refused to act on grounds generally applicable to the Class, making injunctive relief or corresponding declaratory relief appropriate.

36.     Injunctive relief is particularly necessary in this case because: (1) Defendants currently maintain a Secret Setting that allows them to override consumer preferences thereby negatively impacting the consumer experience; (2) Plaintiff desires to purchase products with the same qualities and attributes as Defendants advertised the Devices to have; (3) if Defendants actually manufactured devices with the qualities and attributes as deceptively represented, Plaintiff would purchase those Devices; (4) but Plaintiff does not have the ability to determine whether Defendants' representations are true concerning the Devices if he purchases such Devices in the future.  Indeed, Plaintiff, and putative class members, in the future will likely want to purchase Devices manufactured by Defendants; however, he expects that Defendants will not represent or conceal defects in those Devices.

37.     **Superiority: Federal Rule of Civil Procedure 23(b)(3)**.  A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action.  The damages or other financial detriment suffered by Plaintiff and class members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendants, so it would be impracticable for class members to individually seek redress for Defendants' wrongful conduct.  Even if class members could afford litigation, the court system could not.  Individualized litigation creates a potential for inconsistent and or contradictory judgments and increases the delay and expense to all parties and the court system.  By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

## CAUSES OF ACTION

### COUNT I
### VIOLATION OF THE COMPUTER FRAUD AND ABUSE ACT
### 18 U.S.C. § 1030(a)(5)(A)(iii).

38.     Plaintiff reincorporates and realleges each preceding paragraph herein and brings this claim on behalf of the Class and California Subclass.

39.     Defendants have maintained a Secret Setting that allows them to override consumer's application preferences and the speed at which those applications operate.  This setting leads to diminished device performance, or throttled performance.  Accordingly, Plaintiff and class members did not give permission for Defendants to install and maintain this setting onto their Devices—nor could they—as Defendants did not provide material information to Plaintiff and class members regarding the Secret Setting.

40.     Defendants violated 18 U.S.C. 1030(a)(5)(A)(iii) by intentionally accessing Plaintiff and class members' Devices—protected computers—without authorization, and as a result, caused damage to Plaintiff and class members' Devices by impairing the integrity of those Devices.

41.     Defendants have caused loss to Plaintiff and class members in real, economic damages.  Plaintiff and class members additionally suffered loss by reason of these violations, in

terms of added expense in operating their Devices, which have been throttled, or in the purchase of new, unthrottled Devices.

42.   Unless Defendants are restrained and enjoined, Defendants will continue to commit such acts.  Plaintiff's remedy at law is thus inadequate to compensate for these inflicted and threatened injuries, entitling Plaintiff to remedies including injunctive relief as provided by § 1030(g).

43.   Plaintiff and the Class seek all monetary and non-monetary relief allowed by law, including damages and punitive damages, an order enjoining the acts and practices described above, attorneys' fees, and costs under the Consumer Fraud and Abuse Act.

## COUNT II
## VIOLATION OF THE COMPUTER FRAUD AND ABUSE ACT
## 18 U.S.C. § 1030(a)(5)(C).

44.   Plaintiff reincorporates and realleges each preceding paragraph herein and brings this claim on behalf of the Class and California Subclass.

45.   Defendants have maintained a Secret Setting that allows them to override consumer's application preferences and the speed at which those applications operate.  This setting leads to diminished device performance, or throttled performance.  Accordingly, Plaintiff and class members did not give permission for Defendants to install and maintain this setting onto their Devices—nor could they—as Defendants did not provide material information to Plaintiff and class members regarding the Secret Setting.

46.   Defendants violated 18 U.S.C. 1030(a)(5)(C) by intentionally accessing Plaintiff and class members' Devices—protected computers—without authorization, and as a result, caused damage to Plaintiff and class members' Devices by impairing the integrity of those Devices.

47.   Defendants caused loss to Plaintiff and class members in real, economic damages. Plaintiff and class members additionally suffered loss by reason of these violations, in terms of added expense in operating their Devices, which have been throttled, or in the purchase of new, unthrottled devices.

48.     Unless Defendants are restrained and enjoined, Defendants will continue to commit such acts.  Plaintiff's remedy at law is thus inadequate to compensate for these inflicted and threatened injuries, entitling Plaintiff to remedies including injunctive relief as provided by § 1030(g).

49.     Plaintiff and the Class seek all monetary and non-monetary relief allowed by law, including damages and punitive damages, an order enjoining the acts and practices described above, attorneys' fees, and costs under the Consumer Fraud and Abuse Act.

## COUNT III
### VIOLATIONS OF CALIFORNIA'S UNFAIR COMPETITION LAW
### Cal. Bus. & Prof. Code § 17200, *et seq.*

50.     Plaintiff reincorporates and realleges each preceding paragraph herein and brings this claim on behalf of the California Subclass.

51.     Defendants are "persons" as defined by Cal. Bus. & Prof. Code § 17201.

52.     Defendants violated Cal. Bus. & Prof. Code § 17200, et seq. ("UCL") by engaging in unlawful, unfair, and deceptive business acts and practices.

53.     Defendants' "unfair" acts and practices include:

　　　a.     Knowingly designing, developing, manufacturing, advertising, and selling Devices with a significant Defect that result in the Devices not operating as intended, represented, or advertised under normal usage;

　　　b.     Developing and maintaining a Secret Setting that hide the Defect by throttling Device performance, resulting in the Devices operating at slower speeds than intended, represented, or advertised under normal usage;

　　　c.     Concealing material information from consumers regarding their Devices and Defect so that consumers were unable to make informed choices when purchasing the Device;

　　　d.     Concealing material information from consumers regarding the Secret Setting, so that consumers would not nor could they know that their Devices were being throttled;

e.  Using uniform, deceptive business practices such as throttling to slow down Devices, causing consumers to spend additional money to secure alternative devices with faster performance.

54.  Defendants have engaged in "unlawful" business practices by violating multiple laws including the Computer Fraud and Abuse Act, 18 U.S.C. 1030(a)(5)(A) and (C), Cal. Bus. & Prof. Code § 17500, *et seq.* and California common law.

55.  Defendants' unlawful, unfair, and deceptive acts and practices include:

a.  Knowingly designing, developing, manufacturing, advertising, and selling Devices with significant defects that result in the Device not operating as intended, represented, or advertised under normal usage;

b.  Developing a Secret Setting that hide defects and throttle Device performance, resulting in the Devices operating at slower speeds than intended, represented, or advertised under normal usage;

c.  Concealing material information from consumers regarding their Devices and Defects so that consumers were unable to make informed choices when purchasing the Devices;

d.  Concealing material information from consumers regarding the Secret Setting, so that consumers would not nor could they know that their Devices were being throttled;

e.  Using uniform, deceptive business practices such as throttling software to slow down Devices, requiring consumers to spend additional money on replacement devices as a result of the Defect.

56.  Defendants violated § 17200's prohibition against engaging in unlawful acts and practices by engaging in false and misleading advertising and by omitting material facts from purchasers of their Devices.  As alleged more fully herein, Defendants' marketing and sale of Devices, and specifically their failure to inform customers of the negative impact throttling would have on those Devices, violated Cal. Civ. Code § 1750, *et seq.*, common law, and other statutory violations as alleged herein.  Plaintiff reserves the right to allege other violations of the law, which

constitute other unlawful business acts and practices.  Defendants' conduct is ongoing and continues to this date.

57.  Defendants violated § 17200's prohibition against unfair conduct by failing to inform their customers about the Defect in the Devices; engaging in a pattern or practice of concealing those facts and urging their customers to purchase the Devices, thereby depriving those Device owners of the performance of those Devices that were advertised as existing at the time of purchase.  This conduct is substantially injurious to consumers, offends public policy, is immoral, unethical, oppressive, and unscrupulous as the gravity of the conduct—crippling Devices that are, in many instances, consumers' lifelines—outweighs any alleged benefit.  Specifically, the utility gained by the existence of the Secret Setting on the Devices was outweighed by the diminishment of the Devices' functionality.  Defendants engaged in this conduct at the expense of their customers' rights when other, lawful alternatives were available (such as providing customers with full information about the throttling and Secret Setting).

58.  Defendants engaged in this conduct to gain an unfair commercial advantage over their competitors, seeking to avoid public knowledge of the Defect in their Devices to avoid damage to their sales or reputation.  They withheld critical and material information from Plaintiff and class members, competitors, and the marketplace, all to their unfair competitive advantage.

59.  Defendants' business practices, as alleged herein, constitute fraudulent conduct because they were likely to deceive, and did deceive, class members into purchasing Devices when those Devices were defective.

60.  Defendants' representations and omissions were material because they were likely to deceive reasonable consumers.

61.  California law prohibits unauthorized computer access and fraud pursuant to Cal. Penal Code § 502.

62.  As a result of Defendants' Secret Setting on Plaintiff's and class members' devices, Defendants knowingly accessed and without permission altered, damaged, deleted, destroyed, and otherwise used any data stored on Plaintiff's and class members' devices.

63.     Plaintiff and class members did not know that Defendants would throttle Device performance; accordingly, Defendants did not have permission to install on and employ a Secret Setting to throttle class members' Devices.

64.     Defendants accessed and without permission altered and used data on class members' Devices to execute a scheme or artifice to defraud the class members by, among other things, maintaining market share, convincing Plaintiff and class members to purchase new Devices, and to otherwise ensure that Plaintiff and class members would not discover Defendants' underlying fraud regarding their omissions and misrepresentations regarding the Devices.  As a result, Defendants violated Cal. Penal Code § 502.

65.     Defendants' Secret Setting led to the deterioration of the Devices and functionality of the Devices as a whole, driving consumers to purchase new Devices who would not have outlaid the additional costs had they known the truth and had Defendants not concealed the Defect.

66.     As a direct and proximate result of Defendants' unfair, unlawful, and fraudulent acts and practices, Plaintiff and class members were injured and lost money or property, including from not receiving the benefit of their bargain in purchasing the Devices, and increased time and expense in dealing with Device performance issues.

67.     Defendants acted intentionally, knowingly, and maliciously to violate California's Unfair Competition Law, and recklessly disregarded Plaintiff and class members' rights. Defendants' knowledge of the Devices' performance issues and their Secret Setting, put them on notice that the Devices were not as they advertised.

68.     Plaintiff and class members seek all monetary and non-monetary relief allowed by law, including restitution and all profits stemming from Defendants' unfair, unlawful, and fraudulent business practices; declaratory relief; reasonable attorneys' fees and costs under California Code of Civil Procedure § 1021.5; injunctive relief; and other appropriate equitable relief.

## COUNT IV
## VIOLATIONS OF CALIFORNIA'S FALSE ADVERTISING LAW
### Cal. Bus. & Prof. Code § 17500, *et seq.*

69.     Plaintiff reincorporates and realleges each preceding paragraph herein and brings this claim on behalf of the California Subclass.

70.     Defendants' acts and practices, as described herein, have deceived and/or are likely to continue to deceive class members and the public.  As described above, and throughout this Complaint, Defendants misrepresented the Devices, concealed the Devices' Defect, and concealed the throttling capabilities of their Secret Setting.

71.     By their actions, Defendants disseminated uniform advertising regarding the Devices into California.  The advertising was, by its very nature, unfair, deceptive, untrue, and misleading within the meaning of Cal. Bus. & Prof. Code § 17500, *et seq.*  Such advertisements were intended to and likely did deceive the consuming public for the reasons detailed herein.

72.     The above-described false, misleading, and deceptive advertising Defendants disseminated continues to have a likelihood to deceive in that Defendants failed to disclose the Defect and how their Secret Setting negatively affects their advertised benchmark speeds.

73.     Defendants continued to misrepresent to consumers that their Devices were fast, however, the Devices contained the Defect.  Had Defendants disclosed these issues, rather than falsely advertising the Devices' properties, consumers would not have purchased or, alternatively, paid significantly less for the Devices.

74.     In making and disseminating the statements alleged herein, Defendants knew, or should have known, their advertisements were untrue and misleading in violation of California law. Plaintiff and other class members based their purchasing decisions on Defendants' omitted material facts.  The revenue attributable to products sold in those false and misleading advertisements likely amounts to hundreds of millions of dollars.  Plaintiff and class members were injured in fact and lost money and property as a result.

75.     The misrepresentations and non-disclosures by Defendants of the material facts described and details herein constitute false and misleading advertising and, therefore, constitute violations of Cal. Bus. & Prof. Code § 17500, *et seq*.

76.     As a result of Defendants' wrongful conduct, Plaintiff and the class members lost money.  Plaintiff and the class members are therefore entitled to restitution as appropriate for this cause of action.

77.     Plaintiff and class members seek all monetary and non-monetary relief allowed by law, including restitution of all profits stemming from Defendants' unfair, unlawful, and fraudulent business practices; declaratory relief; reasonable attorneys' fees and costs under California Code of Civil Procedure § 1021.5; injunctive relief; and other appropriate equitable relief.

<u>COUNT V</u>
**VIOLATIONS OF CALIFORNIA'S COMPUTER
DATA ACCESS AND FRAUD ACT
Cal. Penal Code § 502, *et seq*.**

78.     Plaintiff reincorporates and realleges each preceding paragraph herein and brings this claim on behalf of the California Subclass.

79.     In selling the Devices to unsuspecting consumers, Defendants violated the California Penal Code, Computer Data Access and Fraud Act, Cal. Penal Code § 502, *et seq*.

80.     When Defendants provided Devices to consumers—Plaintiff and class members— they did not know, nor could they in the exercise of reasonable diligence know, that the Devices contained a Secret Setting that would throttle their Devices.

81.     Because consumers did not know that the Devices contained such a Secret Setting that allowed Defendants to manually override consumers' preference—*i.e.*, throttling—they did not give Defendants permission to access their Devices to alter the data or computer systems on those Devices.

82.     Defendants provided the Devices to consumers with the Secret Setting as a part of a scheme or artifice to defraud and deceive, because they provided the Devices with the setting instead of informing them of the issues necessitating the Secret Setting.  Instead, Defendants could

have informed consumers that there was a defect that needed to be remedied.  Defendants instead chose concealment and throttling Devices via the Secret Setting.

83.     Defendants provided consumers with Devices containing a Secret Setting to throttle devices as a means to encourage consumers to purchase new devices, wrongfully obtaining money from those consumers.

84.     By offering the Device with the Secret Setting, instead of revealing the truth, Defendants disrupted or caused the disruption of consumer services when they improperly and unlawfully throttled users and class members' Devices.  Plaintiff and class members did not consent to having their Devices throttled, and had they known that their Devices contained a Secret Setting that would allow the throttling of their Devices, they would not have permitted the installation of such a setting.

85.     As a result of Defendants' unlawful conduct, Plaintiff and class members were damaged in an amount to be determined at trial.

86.     Plaintiff and the Subclass seek all monetary and non-monetary relief allowed by law, including damages and punitive damages, an order enjoining the acts and practices described above, attorneys' fees, and costs under the Computer Data Access And Fraud Act.

## COUNT VI
## TRESPASS TO CHATTELS

87.     Plaintiff reincorporates and realleges each preceding paragraph herein and brings this claim on behalf of the California Subclass.

88.     California common law prohibits the intentional intermeddling with personal property in possession of another, without consent, that results in either (a) the deprivation of the use of that personal property; or (b) the impairment of the condition, quality, or usefulness of the property.

89.     Defendants impaired the condition, quality, and usefulness of Plaintiff and class members' Devices, or parts of them, without their knowledge or consent.  Such acts constituted intentional interference with the use and enjoyment of the Devices.

90.     Defendants acted intentionally, because they knew that Plaintiff and class members' Devices contained a Secret Setting that reduced the performance of the Devices.  Defendants did not have consumer's or members' consent to install this Secret Setting and to access their Devices.

91.     Defendants engaged in deception to gain access to the Devices through the use of the Secret Setting.

92.     Plaintiff and class members suffered actual damages as a result of Defendants' actions in an amount to be determined at trial.

93.     Furthermore, Plaintiff seeks punitive damages because Defendants' trespass was committed from wanton or malicious motives, or reckless disregard of the rights of Plaintiff and the Class, for purpose of concealing the Defect.

## COUNT VII
### FRAUD

94.     Plaintiff reincorporates and realleges each preceding paragraph herein and brings this claim on behalf of the Class and California Subclass.

95.     At the time Plaintiff and class members purchased their Devices, Defendants did not disclose, but instead concealed and misrepresented, the Defect, the Secret Setting, and the Devices' speed and performance, as discussed herein.

96.     Further, Defendants concealed that they could access the Devices through the use of a Secret Setting, allowing them to prioritize applications over those consumers widely use and prefer.

97.     Defendants affirmatively misrepresented the Devices' benchmark speeds, giving the Devices the appearance of possessing superior speed and processing capabilities in order to disguise fundamental Device Defects.

98.     Defendants also knew that their omissions and misrepresentations regarding the Devices and the Secret Setting were material, and that a reasonable consumer would rely upon Defendants' representations (and corresponding omissions) in making purchasing decisions.

99.     Plaintiff and class members did not know—nor could they have known through reasonable diligence—about the Defect or the Secret Setting.

100.     Plaintiff and class members would have been reasonable in relying on Defendants' misrepresentations (and corresponding omissions) in making their purchasing decisions.

101.     Plaintiff and class members had a right to rely upon Defendants' representations (and corresponding omissions) as Defendants maintained monopolistic control over knowledge of the true speed of the Devices and knowledge of the Secret Setting.

102.     Plaintiff and class members sustained damages as a result of their reliance on Defendants' omissions and misrepresentations, thus causing Plaintiff and class members to sustain actual losses and damages in a sum to be determined at trial, including punitive damages.

### COUNT VIII
### CONSTRUCTIVE FRAUD

103.     Plaintiff reincorporates and realleges each preceding paragraph herein and brings this claim on behalf of the Class and California Subclass.

104.     At the time Plaintiff and class members purchased their Devices, Defendants did not disclose, but instead concealed and misrepresented, the Defect or the Secret Setting as discussed herein.

105.     Defendants affirmatively misrepresented the Devices' benchmark speeds, giving the Devices the appearance of possessing superior speed and processing capabilities in order to disguise fundamental Device Defects.

106.     Defendants also knew that their omissions and misrepresentations regarding the Defect and the Secret Setting were material, and that a reasonable consumer would rely upon Defendants' representations (and corresponding omissions) in making purchasing decisions.

107.     Defendants had an obligation not to omit or misrepresent the Defect or the Secret Setting because: (a) they were in the sole possession of such information; (b) they made partial representations regarding the quality of the Devices; (c) Plaintiff and class members relied upon Defendants to make full disclosures based upon the relationship between Plaintiff and class members, who relied on Defendants' representations and omissions, and were reasonable in doing so, with the full knowledge of Defendants that they did and would have been reasonable in doing so.

108.    Plaintiff and class members did not know—nor could they have known through reasonable diligence—about the Defect and Secret Setting.

109.    Plaintiff and class members would have been reasonable in relying on Defendants' misrepresentations (and corresponding omissions) in making their purchasing decisions.

110.    Plaintiff and class members had a right to rely upon Defendants' representations (and corresponding omissions) as Defendants maintained monopolistic control over knowledge of the true speed of the Devices and knowledge of the Secret Setting, and what information was available regarding the Devices' speed and the Secret Setting.

111.    Defendants breached their duty to Plaintiff and class members to make full disclosures of the Defect and Secret Setting.

112.    Plaintiff and class members sustained damages as a result of their reliance on Defendants' omissions and misrepresentations, and Defendants' breach of their duty, thus causing Plaintiff and class members to sustain actual losses and damages in a sum to be determined at trial.

## COUNT IX
## FRAUDULENT INDUCEMENT

113.    Plaintiff reincorporates and realleges each preceding paragraph herein and brings this claim on behalf of the Class and California Subclass.

114.    At the time Plaintiff and class members purchased their Devices, Defendants did not disclose, but instead concealed and misrepresented, the Secret Setting and the Defect in the device as discussed herein.

115.    Defendants knew, or should have known, that the Devices' speed was falsely portrayed and that knowledge of the Secret Setting was withheld from the consumer public.

116.    Defendants also knew that their omissions and misrepresentations regarding the Defect and the Secret Setting were material, and that a reasonable consumer would rely on Defendants' representations (and corresponding omissions) in making purchasing decisions.

117.    Plaintiff and class members did not know—nor could they have known through reasonable diligence—about the Defect or Secret Setting.

118.     Plaintiff and class members would have been reasonable in relying on Defendants' misrepresentations (and corresponding omissions) in making their purchasing decisions.

119.     Plaintiff and class members had a right to rely on Defendants' representations (and corresponding omissions) as Defendants maintained a monopolistic control over the Defect and the Secret Setting, and what information was available regarding the Defect and Secret Setting.

120.     Defendants intended to induce—and did, indeed, induce—Plaintiff and class members into purchasing the Devices based upon their affirmative representations and omissions.

121.     Plaintiff and class members sustained damages as a result of their reliance on Defendants' omission and misrepresentations, thus causing Plaintiff and class members to sustain actual losses and damages in a sum to be determined at trial.

## COUNT X
### MONEY HAD AND RECEIVED

122.     Plaintiff reincorporates and realleges each preceding paragraph herein and brings this claim on behalf of the Class and California Subclass.

123.     As a result of the Plaintiff's and class members' purchase of the Devices, Defendants obtained money for their own use and benefit, and, as a result of their breaches of contract and breaches of the good faith and fair dealing implied in those agreements, became indebted to the Plaintiff and class members in an amount to be determined at trial.

124.     No part of any of the monies due and owing to Plaintiff and class members has been repaid, although Plaintiff and class members demand repayment, leaving the balance due, owing, and unpaid in an amount to be determined at trial plus interest.

## COUNT XI
### FRAUDULENT OMISSION OR CONCEALMENT

125.     Plaintiff reincorporates and realleges each preceding paragraph herein and brings this claim on behalf of the Class and California Subclass.

126.     At all relevant times, Defendants were engaged in the business of designing, manufacturing, distributing, and selling the Devices.

127.    Defendants, acting through their representatives or agents, delivered Devices to their own distributors and various other distribution channels.

128.    Defendants willfully, falsely, and knowingly omitted various material facts regarding the quality and character of the Devices.

129.    Rather than inform consumers of the truth regarding the Defect and the Secret Setting, Defendants concealed material information related to the Defect and the Secret Setting.

130.    Defendants omitted this material information to drive up sales and maintain their market power, as consumers would not purchase Devices, or would pay substantially less for them, had consumers known the truth.

131.    Plaintiff and the class members accepted the terms of use, which were silent on the performance-throttling features that Defendants installed in their Devices.  Plaintiff and class members had no way of knowing about the Devices' Defect or that the Secret Setting would throttle their Devices.

132.    Plaintiff and class members could not have discovered the above information on their own, because Defendants were in the exclusive possession of such information.

133.    Although Defendants had a duty to ensure the accuracy of information regarding the performance of their Devices, they did not fulfill these duties.

134.    Plaintiff and class members sustained injury due to the purchase of Devices that did not live up to performance representations and the installation of a Secret Setting that throttled Devices without their knowledge.  Plaintiff and class members are entitled to recovery full or partial refunds for Devices they purchased due to Defendants' misrepresentations, or they are entitled to damages for the diminished value of their Devices, amounts to be determined at trial.

135.    Defendants' acts were done maliciously, oppressively, deliberately, and with intent to defraud, and in reckless disregard of Plaintiff's and class members' rights and well-being, and in part to enrich themselves at the expense of consumers.  Defendants' acts were done to gain commercial advantage over competitors, and to drive consumers away from consideration of competitor devices.  Defendants' conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future.

## COUNT XII
### FRAUDULENT MISREPRESENTATION

136.   Plaintiff reincorporates and realleges each preceding paragraph herein and brings this claim on behalf of the Class and California Subclass.

137.   At all relevant times, Defendants were engaged in the business of designing, manufacturing, distributing, and selling the Devices.

138.   Defendants, acting through their representatives or agents, delivered Devices to their own distributors and various other distribution channels.

139.   Defendants willfully, falsely, and knowingly omitted various material facts regarding the quality and character of the Devices and the presence of the Secret Setting.

140.   Rather than inform consumers of the truth regarding the Defect, Defendants misrepresented the Devices' speed and power at the time of purchase.

141.   Defendants made these material misrepresentations to boost or maintain sales of the Devices, and in order to falsely assure purchasers of Devices that Defendants are reputable companies and that their Devices are reliable and able to perform as promised.  The false representations were material to consumers because the representations played a significant role in the value of the Devices purchased.

142.   Plaintiff and class members accepted the terms of use, which were silent on the performance-throttling features that Defendants installed in their Devices.  Plaintiff and class members had no way of knowing that Defendants' misrepresentations as to the Devices' speed, power, and performance were misleading.

143.   Plaintiff and class members could not have discovered the misleading nature of Defendants' misrepresentations on their own, because Defendants were in exclusive possession of such information.

144.   Although Defendants had a duty to ensure the accuracy of the information regarding the performance of their Devices, they did not fulfill these duties.

145.   Defendants misrepresented material facts partly to pad and protect their profits, as they saw that profits and sales of their Devices were essential for their continued growth and to

maintain and grow their reputation as a premier designer and vendor of the Devices.  Such benefits came at the expense of Plaintiff and class members.

146.    Plaintiff and class members were unaware of these material misrepresentations, and they would not have acted as they did had they known the truth.  Plaintiff's and class members' actions were justified given Defendants' misrepresentations.  Defendants were in the exclusive control of material facts, and such facts were not known to the public

147.    Due to Defendants' misrepresentations, Plaintiff and class members sustained injury due to the purchase of Devices that did not live up to performance representations, and the installation of the Secret Setting without their knowledge.  Plaintiff and class members are entitled to recover full or partial refunds for Devices they purchased due to Defendants' misrepresentations, or they are entitled to damages for the diminished value of their Devices, amounts to be determined at trial.

148.    Defendants' acts were done maliciously, oppressively, deliberately, and with intent to defraud, and in reckless disregard of Plaintiff's and class members' rights and well-being, and in part to enrich itself at the expense of consumers.  Defendants' acts were done to gain commercial advantage over competitors, and to drive consumers away from consideration of competitor devices.  Defendants' conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future.

### COUNT XIII
### NEGLIGENT MISREPRESENTATION

149.    Plaintiff reincorporates and realleges each preceding paragraph herein and brings this claim on behalf of the Class and California Subclass.

150.    Defendants negligently and recklessly omitted certain material facts regarding the Devices and the Secret Setting.  Defendants failed to warn consumers that their Devices contained material Defects that resulted in the Device not performing as warranted or advertised.

151.    The advertisements and warranties, which were made expressly through uniform representations from Defendants were material and would have been considered by a reasonable consumer in making purchasing decisions.

152.    Plaintiff and class members acquired Devices believing they would function as advertised.

153.    As a result, Plaintiff and class members were directly and proximately injured by Defendants' negligence in failing to inform Plaintiff and class members of the material Defects in the Devices and the Secret Setting.  Accordingly, Plaintiff and class members are entitled to damages in an amount to be proven at trial.

## COUNT XIV
## QUASI-CONTRACT / UNJUST ENRICHMENT

154.    Plaintiff reincorporates and realleges each preceding paragraph herein and brings this claim on behalf of the Class and California Subclass.

155.    Plaintiff and class members purchased Devices from Defendants, and those Devices were not as Defendants represented them to be, enticing Plaintiff and the Class to purchase the Devices.  Had Plaintiff and the Class known of the Defect, they would have paid less for their Devices and would not have paid for repairs, service or upgrades caused by the Defect.

156.    Accordingly, Plaintiff and class members were damaged, and Defendants were unjustly enriched by the purchase price of those Devices.

157.    Plaintiff and class members are entitled to damages in an amount Defendants were unjustly enriched, to be determined at trial.

158.    Moreover, Defendants' conduct was willful, intentionally deceptive, and intended to cause economic injury to Plaintiff and the Class.  Defendants are therefore liable to pay punitive damages.

159.    In every contract or agreement there is an implied promise of good faith and fair dealing under California law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself and all others similarly situated respectfully requests that this Court enter judgment against Defendants and in favor of Plaintiff and the Class and Subclass, and award the following relief:

a. Certifying this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure, declaring Plaintiff as representative of the Class and Subclass, and Plaintiff's counsel as counsel for the Class and Subclass;

b. Awarding declaratory relief and enjoining Defendants from continuing the unlawful, deceptive, fraudulent, harmful, and unfair business conduct and practices alleged herein;

c. Ordering Defendants to pay actual, compensatory, and statutory damages (including punitive damages) and restitution to Plaintiff and the other class members, as allowable by law;

d. Order Defendants to pay both pre-and post-judgment interest on any amounts awarded;

e. Ordering Defendants to pay attorneys' fees and cost of suit; and

f. Ordering such other and further relief as may be just and proper.

## JURY TRIAL DEMANDED

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of any and all issues in this action so triable as of right.

Dated:  July 28, 2021                                     Respectfully submitted,

**BURSOR & FISHER, P.A.**

By:_____*/s/ Neal J. Deckant*_____
            Neal J. Deckant

Neal J. Deckant (State Bar No. 322946)
Sean L. Litteral (State Bar No. 331985)
1990 North California Boulevard, Suite 940
Walnut Creek, CA  94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
Email: ndeckant@bursor.com
            slitteral@bursor.com

*Attorneys for Plaintiff*